IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GORDON LEE DUNN, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 00-BU-1001-E |
| ) | |
| BRUCE BARCLIFT; SGT. DABBS; and ) | |
| OFFICER FREUTENBURG, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF OPINION

This is a civil action brought pursuant to 42 U.S.C. §1983, in which plaintiff, Gordon Lee Dunn, Jr., alleges that he has been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America. At present, plaintiff is an inmate of the State of Alabama, and is currently incarcerated at Holman Correctional Facility. At the time the plaintiff's constitutional rights were allegedly infringed, he was being housed at Calhoun County Jail in Anniston, Alabama. He has named as defendants Bruce Barclift, Sgt. Dabbs and Officer Freutenburg.[1] For relief, plaintiff seeks monetary damages and injunctive relief.

In response to the court's order for special report, defendants filed a special report accompanied by documents and the affidavits of defendants Bruce Barclift, Sgt. Dabbs and Officer Freutenberg. By order of the court, the parties were advised that the defendants' special report

---

[1] The correct spelling of this defendant's name is "Freutenberg."

> proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

## FACTUAL ALLEGATIONS

### Plaintiff's Allegations and Evidence

On "March 29, 2000, while [plaintiff] was celled in the pink section lock up" [of Calhoun County Jail], Officer Freutenberg intentionally gave the plaintiff Haldol,[2] a prescription medication. Plaintiff asserts that Haldol, if taken without other medication to stifle its side-effects, causes the patient to suffer severe muscle spasms. Amended Complaint (Document # 16) at 5-6. Plaintiff contends Officer Freutenberg "had a grudge against him, and Officer Freutenburg gave [plaintiff] the medication to get back at him for several times [p]laintiff and Officer Freutenb[e]rg had arguments with each other in the [p]ink lock-up section." *Id.* at 6.

Plaintiff states that after he was given the Haldol, he began to suffer muscle spasms "in different stages. The spasms started with the small pulling of the neck muscles then the spasms got

---

[2] The Physicians' Desk Reference (PDR) describes Haldol as an antipsychotic medication. Adverse reactions to ingestion can manifest in a patient's central nervous system. *Physicians' Desk Reference* (46th ed. 1999). For instance, extrapyramidal symptoms (EPS) are frequently reported within the first few days of treatment. *Id.* "EPS can be characterized generally as Parkinson-like symptoms, akathisia, or dystonia . . . . While all can occur at relatively low doses, they occur more frequently and with greater severity at higher doses . . . . The symptoms can be controlled with . . . administration of antiparkinson drugs." *Id.*

3

worse by almost stop[p]ing the breathing [and] keeping the [p]laintiff from getting up even to use the bathroom . . . . " *Id.* Plaintiff contends that he is familiar with Haldol, particularly when it is administered without proper medication to counteract its side effects. He acquired this knowledge because he witnessed "three more inmates that this has happen (sic) to in the Calhoun County Jail. This all happen (sic) because a[n] officer gave the [Haldol] to the inmate or the officer did not watch another inmate take the[ir] medication . . . [W]hen that happens, a[n] inmate gives [the Haldol] to someone else or tricks someone else [into taking the Haldol] to see them in muscle spa[sms] where they can laugh at them." *Id.*

The plaintiff was able to "complain... [about the severe side effects] numerous times to Officer Freutenb[e]rg. . . .[and] asked to see a nurse or doctor only . . . .because the medication was causing him to be very sick . . . ." *Id.* at 4-5. Officer Freutenberg responded by telling the plaintiff the medication he had given the plaintiff was for a "headache." *Id.* at 5. No medical personnel came to help the plaintiff.

Thereafter, plaintiff "had fellow inmate Michael Clay in the cell next to him to get the officer. Again, . . . . Officer Freutenb[e]rg c[a]me back." *Id.* When the plaintiff tried to explain that he needed medical assistance, Officer Freutenberg said, " So what . . . that's not my problem." *Id.* Plaintiff then wrote a letter to defendant Bruce Barclift and a letter to defendant Sgt. Dabbs requesting medical assistance. *Id.* He never received any response from either defendant, nor was he afforded any medical attention. *Id.* Plaintiff does not state how long the spasms continued, but apparently they subsided and he suffered no permanent damage.

Plaintiff also contends that "on one occasion, . . . Officer Freutenb[e]rg used a [w]hole can of mace to spray him . . . [when] plaintiff was already handcuffed by other officer[s]. . . . *Id.* at 6. He

4

argues that this "show[s] that Officer Freutenb[e]rg . . ." was spraying the mace for no other reason than he "wanted something to happen to the plaintiff at that time." *Id.*

**Defendant's Evidence**

Defendants contend the plaintiff has failed to state a cause of action with regard to his cruel and unusual punishment claims because he failed to show that he was suffering from a serious medical need. Moreoever, he has not shown the defendants were deliberately indifferent to that need. Special Report (Document #30) at 9-13. Further, defendants argue that plaintiff has also failed to state a cause of action with regard to the excessive force claim against Officer Freutenberg. Defendants assert that they are entitled to qualified immunity as to all claims. *Id.* at 14.

Officer Freutenberg responded to the plaintiff's cruel and unusual punishment allegations by stating, "I have never dispensed any medication to Mr. Dunn other than medication which was prescribed to him by medical personnel and contained in the blister-packs." Freutenberg affidavit (Exhibit 3 to Document # 30) at 1. "I have never given Mr. Dunn any medication intended for another inmate." *Id.* at 2. "I have never witnessed Mr. Dunn suffering from muscle spasms, breathing problems or that he had allegedly been given the wrong medication. I have never refused to obtain medical care and treatment for any inmate, including Mr. Dunn, for any reason." *Id.* However, Freutenberg does not refute that he argued with the plaintiff on several occasions and that he had a grudge against the plaintiff.

Officer Freutenberg responded to the plaintiff's excessive force allegations by stating:

[O]n May 22, 2000, there was an "all rover call" placed by the correctional officer in the central control tower of the jail which indicates that an officer needs assistance. I responded to the call and went to the Pink Section of the jail which is maximum security. Officers Walker, White and Knowlton also responded to the " all rover call." Officer Fulmer and Medlin were telling Mr. Dunn to re-enter his cell after his

5

> one-hour recreational break. Mr. Dunn had to be told several times to return to his cell. He refused and was hostile to all Officers. Because he would not respond and was becoming more hostile, several Officers attempted to mildly restrain him in order to return him to his cell. Mr. Dunn violently resisted the attempted restraint and began striking the Officers in an effort to free himself.
>
> I determined . . . Pepper Spray was necessary in order to ensure Mr. Dunn's safety as well as the safety of the Officers. The spray was used in the minimal amount necessary to subdue Mr. Dunn. The entire can of spray was not used on Mr. Dunn. . . . Once the spray was used, Mr. Dunn complied with the Officers' request and was handcuffed. He was immediately taken to booking and decontaminated. . . . [T]he use of the O.C. Pepper Spray was absolutely necessary to subdue Mr. Dunn, protect his safety and to protect the safety of the involved Officers.

Freutenberg affidavit, at 2-3.

From May 1998 to May 1999, defendant Danielle Dabbs was employed as a corrections officer at the Calhoun County Jail medical office. Dabbs affidavit (Exhibit 2 to Document # 30) at 2. She states " I have never received a letter from Mr. Dunn requesting medical services for any reason. If I had received such a letter, I would have forwarded it to the medical officer at that time and placed a copy of it in his medical file. His medical file contains no letter to me requesting medical services." *Id.* Moreoever, she denies that she was ever "notified that Mr. Dunn allegedly needed medical attention for muscle spasms, breathing problems, or that he had allegedly been given the wrong medication." *Id.* In fact, Defendant Dabbs states that she was completely unaware of the plaintiff's allegations until she received a copy of the complaint in this action. *Id.*

Sgt. Dabbs suggests the plaintiff is making fraudulent accusations based upon an incident which happened to another inmate. Dabbs states she was aware inmate Michael Clay took Haldol intended for another inmate. (Exhibit 3 to Document #30) at 3. She proffers that Mr. Clay suffered some 'mild swelling,' the emergency room was contacted, and he was placed under 24-hour surveillance. *Id.* While she attests that Mr. Clay suffered no long term adverse effects, the fact

6

remains that upon discovery of Clay's condition, staff members "immediately t[ook Clay] to booking, Stringfellow Hospital's emergency room was contacted, and he was placed under 24-hour surveillance." *Id.* Thereafter, Mr. Clay was moved to the Pink Section of the jail where he and the plaintiff "were adjoining cell mates." *Id.*

Defendant Bruce Barclift has acted as Jail Administrator for the Calhoun County Jail since 1993. Barclift Affidavit (Exhibit 1 to Document #30) at 1. "As the Jail Administrator, I am in charge of the over-all operation of the Calhoun County Jail." *Id.* Defendant Barclift described the medical services and procedures available at the jail during the time the plaintiff was incarcerated as follows:

> From January of 2000 until the day Mr. Dunn was transferred to another facility in May 8, 2000, an L.P.N. from Urgent Care was at the jail five days a week from approximately 8:00 a.m. - 12:00 p.m. Additionally, a physician's assistant from Urgent Care was at the jail twice a week. If an inmate wanted medical care and treatment, then he/she completed a written request which was forwarded to the Medical Officer who then made arrangements for the inmate to receive medical services. Other than in emergency situations, no jail personnel, including myself, made or makes a determination as to whether medical treatment is necessary or indicated. If medical treatment is requested by an inmate, arrangements are made for that inmate to receive medical services. No inmate was or is denied access to appropriate health care services by me or any other jail personnel for any reason.

*Id.* at 1-2.

The court has reviewed the documentation offered by the defendants in support of their sworn statements with regard to cruel and unusual punishment and excessive force claims. Defendants have submitted a "Calhoun County Sheriff's Office Chemical Agent Exposure and Decontamination Report" which shows the plaintiff was sprayed with mace at approximately 9:05 a.m. on May 2, 2000, and decontamination procedures commenced at 9:11 a.m. on the same date.

7

(Exhibit A to Document #30) at 1. While the court did review three (3) written requests by the plaintiff for medical attention during the time he was incarcerated in jail, none of the medical requests relate to the March 29, 2000, incident. Barclift affidavit (Exhibit 1 to Document #30) at 2, 3, and 92. Nor do the records show that plaintiff was provided medical care in response to any verbal complaints.

**Plaintiff's Reply**

In response to the defendants' motion for summary judgment, the plaintiff filed an affidavit in his behalf (Document #35), an affidavit by his mother (Document #36), and an affidavit by inmate Johnny Sistrunk (Document #46).

The plaintiff reiterates (Document #35, at 2) that Officer Freutenberg told the plaintiff that he was giving the plaintiff "head ache . . . medication which turned out to be another inmate's medication. The medication was Haldol . . . I la[id] in my cell not knowing if I was going to live or die through that moment. . . . I could hardly breath[e] and . . . it felt like my neck would snap into (sic)!" Plaintiff's mother also indicates that she visited her son and "he was talking funny [and] his neck was drawing to one side, and he told me that Officer Freutenb[e]rg gave him some medication and [tried] to 'kill' him! . . . I told a woman officer on the way out about my son's problem!" (Document #36, at 3). While Johnny Sistrunk attests (Document #46) he observed some of the defendants engaging in extremely unprofessional behavior, other than his assertion that defendant Freutenberg harassed the plaintiff, none of those observations relate to plaintiff's allegations of excessive force and cruel and unusual punishment.

8

## **CRUEL AND UNUSUAL PUNISHMENT**

Plaintiff has alleged two (2) incidents of cruel and unusual punishment against him. First, plaintiff asserts defendant Freutenberg intentionally gave him Haldol for the very purpose of causing him severe muscle spasms. Second, plaintiff avers defendants Freutenberg, Dabbs and Barclift were deliberately indifferent to his serious medical needs by refusing to obtain medical attention for the plaintiff after he notified them he was suffering from severe muscle spasms.

### *Discussion*

The United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976), stated that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency,"....against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society". . . .or which involve the "unnecessary and wanton infliction of pain . . . ." (citations omitted). Plaintiff's allegations that defendant Freutenberg intentionally inflicted pain upon him solely because Freutenburg had a grudge against him states an Eighth Amendment claim for cruel and unusual punishment.

Further, "[p]rison officials have a duty, in light of the Eighth Amendment's prohibition against cruel and unusual punishment, to 'ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Sanville v. McCaughtry*, 2001 WL 1117363, * 6, — F.3d — , (7th Cir. 2001), (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "Where...the allegations of an Eighth Amendment violation come from activities of prison officials in the administration of the prison system, an evaluation of an inmate's claim requires analysis of

9

both an objective component (Was the deprivation sufficiently serious?) and a subjective component (Did the officials act with a sufficiently culpable state of mind?)" *Fountain v. Talley*, 104 F.Supp.2d 1345, 1350 (M.D. Ala. 2000) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Of the two possible standards which can be applied to the subjective component of the evaluation, the appropriate standard to be used with regard to an inmate who has been subjected to inadequate medical care is "whether prison officials were 'deliberately indifferent' to his health or safety."

### *Objective component*

"A serious medical need, in order to maintain an Eighth Amendment claim for medical maltreatment, is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Wilson v. Wigen,* 1997 WL 158117, * 5 — F.2d — (E.D. Pa. 1997) (other citations omitted). *See also Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994). Defendants have admitted, through the testimony of defendant Dabbs, that the jail provided prompt medical attention to inmate Michael Clay after he ingested Haldol, when Mr. Clay's symptoms only surfaced in the form of mild swelling. The plaintiff experienced side effects which, if true, are far more extreme than those suffered by Mr. Clay. Because an inmate who presented with symptoms of side effects related to ingestion of Haldol had previously been readily recognized by Calhoun County Jail corrections officers (lay persons) as requiring medical attention, this court finds that plaintiff has properly claimed that he suffered from a serious medical need.

10

### *Subjective Component*

Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of an "excessive risk to inmate health or safety" and disregarded that risk. *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999), *interpreting Farmer v. Brennan, supra* at 837, 114 S.Ct. at 1979. Further, the conduct engaged in must be "more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1254-1255 (11th Cir. 1999), *interpreting Estelle v. Gamble, supra* at 104-106, 97 S.Ct. at 285.

Deliberate indifference can be shown in a variety of ways. It has been "consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). The Eleventh Circuit also held in *Howell v. Evans*, 922 F.2d 712, 720 (11th Cir.), *vacated*, 931 F.2d 711 (11th Cir. 1991), *reinstated by unpublished order* (June 24, 1991), cited in *Howell v. Burden*, 12 F.3d 190, 191(11th Cir. 1994):

> The standard for deliberate indifference focuses on the failure to provide or allow proper treatment in the face of information which reasonably should compel action. Such deliberate indifference is often manifest by a refusal to act when certain actions were or should have been known to be necessary, rather than simply a failure to act.

Viewing the allegations in a light most favorable to the plaintiff, the court finds the plaintiff has stated a claim which, if proven, shows that Freutenberg knowingly disregarded the health and safety of the plaintiff. Plaintiff states that Freutenberg intentionally dispensed Haldol to him after he complained of a headache because Freutenberg had a grudge against him. The side effects of Haldol were common knowledge to both the inmates and to staff at the Calhoun County Jail. The court finds that the risk to the plaintiff's health and safety was open and obvious to defendant

Freutenberg. Further, according to plaintiff's allegations, Freutenburg intentionally disregarded that risk by tricking the plaintiff into taking an anti-psychotic drug and then refusing to provide the plaintiff medical treatment when he was informed of the plaintiff's condition. The court also finds that plaintiff's claims, if proven, show that defendant Dabbs and Barclift ignored the plaintiff's requests for medical assistance.

In contrast, Freutenberg denies dispensing the medication to the plaintiff, denies observing the plaintiff suffering any adverse reaction to same, and denies that he refused to assist the plaintiff with medical treatment. Defendants Dabbs and Barclift contend they never received any written correspondence from the plaintiff and that they were completely unaware of the incident until they were served with a copy of the complaint in this action.

### **Qualified Immunity**

Defendants have pled the defense of qualified immunity. Government officials performing discretionary functions are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). There is no dispute that the defendants were acting within their discretionary authority at all times relevant to this case. Therefore, the issue before the court is whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable sheriff or a reasonable detention officer would have known. In judging the reasonableness of the defendants' actions, the court must consider the law established at the time of the incidents made the basis of this

action, as well as "the information possessed by the official at the time the conduct occurred." *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996)(citation omitted).

At the time of plaintiff's incarceration in the Calhoun County Jail, it was clearly established that a jail official violates a pretrial detainee's Fourteenth Amendment right to due process and a convicted person's Eighth Amendment protection against cruel and unusual punishment if he acts with deliberate indifference to the serious medical needs of the inmate.[3] *See, e.g., Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir. 1988)(citing *Estelle v. Gamble, supra*). Specifically, the case law was clear that an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d at 1186 ("[K]nowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference."); *Carswell v. Bay County*, 854 F.2d 454, 457 (11th Cir. 1988)("[W]ith evidence of knowledge [of the prisoner's need for medical care] the jury could have concluded that the failure to provide Carswell with medical care constituted deliberate indifference."); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[K]nowledge for the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference"). This court's previous discussion concerning the defendants' knowledge of the side

---

[3] A government official's treatment of a pretrial detainee is governed by the due process clause of the Fourteenth Amendment, *see Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S. Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979), while the cruel and unusual punishment clause of the Eighth Amendment governs an officials' treatment of a convicted prisoner. *See Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291. The Eleventh Circuit has held that the minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate in difference to serious medical needs. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

effects of Haldol obviates its ability to grant the defendants qualified immunity, assuming all other facts alleged by the plaintiff are true. Therefore, the defendants' request for summary judgment on the basis of qualified immunity is due to be denied.

## Conclusion

The factual allegations regarding deliberate indifference to the plaintiff's serious medical needs are clearly in dispute. Any time there is such a divergence of accounts by the parties, summary judgment is not appropriate. The court has carefully reviewed the events as described by both parties; however, it is well established that assessing the credibility of the plaintiff or defendants' claims is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255; *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties*, 941 F.2d 1428, 1437 (11th Cir. 1991); *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1425 (11th Cir. 1990). Therefore, the motion for summary judgment filed in behalf of the defendants with regard to the claims of cruel and unusual punishment inflicted upon the plaintiff is due to be DENIED.

## **EXCESSIVE FORCE**

The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992), that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

14

sadistically to cause harm." In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Id.* at 6 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the force used was excessive. These factors include: 1) "the need for application of force;" 2) "the relationship between that need and the amount of force used;" 3) "the threat 'reasonably perceived by the responsible officials;'" 4) "any efforts made to temper the severity of a forceful response;" and 5) "the extent of the injury suffered by the inmate." *Id.* at 7. The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one, when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

In the present case, plaintiff does not deny that he continually refused to obey direct orders to return to his cell after his exercise break. Further, the plaintiff does not refute defendant Freutenberg's assessment that plaintiff became hostile toward the officers. When attempts were made by the officers to mildly restrain the plaintiff in order to return him to his cell, plaintiff does not deny that he violently resisted the attempted restraint and began striking the officers in an effort to free himself. Finally, plaintiff does not dispute that after he was sprayed with mace, he was immediately taken to booking and decontaminated.

Plaintiff and defendant Freutenberg's versions of the event only differ as to the timing and amount of pepper spray used against the plaintiff. Plaintiff contends that defendant Freutenberg sprayed him with a whole can of mace after plaintiff already been handcuffed. Plaintiff therefore concludes that defendant Freutenberg intended to cause him harm. Defendant Freutenberg asserts that he utilized the minimal amount of the spray necessary to subdue the plaintiff and that he did not spray an entire can of mace on the plaintiff. Freutenberg contends that after the spray was used, the plaintiff complied with the officers' request and was handcuffed. Freutenberg attests that use of pepper spray was absolutely necessary for the protection of the plaintiff and the officers involved.

As the Seventh Circuit Court of Appeals has observed:

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the [inmate], and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force.

*Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984), *cert. denied*, 470 U.S. 1085 (1985). The "use of [a chemical] substance in small amounts may be a necessary . . . technique if a prisoner refuses after adequate warning to [obey a direct order] or upon other provocation presenting a reasonable possibility that slight force will be required." *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979). Furthermore, "[t]he responsible institutional personnel on the spot are in a better position to determine when [the use of a chemical substance] is necessary than the courts." *Soto v. Dickey*, 744 F.2d at 1270.

Without question, plaintiff's repeated refusals to obey the officers' orders to return to his cell and his disruptive and threatening behavior necessitated the use of reasonable physical force to

16

compel plaintiff to obey. Freutenberg states that he sprayed plaintiff with the minimal amount of pepper spray to subdue the plaintiff in an effort to encourage the plaintiff to return to his cell. The court also notes Officer Medlin's report, which suggests that the pepper spray was either applied in conjunction with the plaintiff's handcuffing or immediately after he was handcuffed. Medlin states "Dunn was eventually restrained, ...and in addition O.C. Pepper Spray was used to help safely contain [inmate] Dunn."   (Exhibit A to Document #30) at 2. It is undisputed that plaintiff was immediately decontaminated, and he recovered completely from the effects of the spray.

## Conclusion

"The core judicial inquiry" of "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" is informed by the mandate that institutional officials must be given deference in the manner in which they maintain order. *See, e.g., Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994); *Williams v. Burton*, 943 F.2d 1572 (11th Cir. 1991), *cert. denied*, 505 U.S. 1208 (1992). Given the obvious need for force in this case, the amount of force used by Freutenberg was not so unreasonable or extraordinary as to indicate anything but an attempt to compel plaintiff to obey a lawful order. Consequently, defendant Freutenberg is entitled to summary judgment on this claim.

An Order consistent with this opinion shall be entered contemporaneously herewith.
DONE this the 23rd day of October, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE